IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ORTHO SOLUTIONS, LC D/B/A DYNAFLEX | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. _____ |
| ERIC SANCHEZ, | ) ) ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

1.  Plaintiff Ortho Solutions, LC d/b/a DynaFlex ("DynaFlex") is a limited liability company organized, existing, and in good standing under the laws of the State of Missouri.

2.  Upon information and belief, Defendant Eric Sanchez ("Sanchez") is an individual residing in the State of California.

### Nature of the Case

3.  For over three years Sanchez was employed as a sales representative/territory manager for DynaFlex. In his role, Sanchez had access to confidential, proprietary, and trade secret information relating to DynaFlex's customers, pricing and product lines. On April 15, 2019, Sanchez resigned from DynaFlex. Shortly after Sanchez resigned, DynaFlex learned that Sanchez has breached a number of provisions of his Non-Competition and Confidentiality Agreement with Sanchez including accepting employment with a direct competitor. In order to protect its trade secrets and enforce its non-compete, DynaFlex is forced to bring this action to enjoin Sanchez immediately, as well as for other damages and relief.

### Jurisdiction and Venue

4.  This case presents a federal question under the Defend Trade Secrets Act of 2016, Public Law 114-153, 18 U.S.C. § 1836(b) ("DTSA"), which specifically provides for original

jurisdiction in this Court pursuant to 18 U.S.C. 1836(c). Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. This Court also has pendant jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that all DynaFlex's claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

6. This Court has specific personal jurisdiction over Sanchez pursuant to R.S.Mo. § 506.500.1(1) & (2) because Sanchez entered into the Non-Competition and Confidentiality Agreement in Missouri and transacted business within Missouri.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) & (3) because the events giving rise to the claims in this action occurred in substantial part in this District (where Sanchez accepted the contract and transacted business) and threatened harm has occurred and will continue to occur here if Sanchez is not enjoined.

## Allegations Common to All Counts

8. DynaFlex is headquartered in St. Ann, Missouri.

9. For over 50 years, DynaFlex has manufactured and distributed products worldwide in five dental related markets: Orthodontic Products, Orthodontic Laboratory, Dental Sleep Medicine, Clear Aligners and Digital Office Solutions.

10. Over the course of the years of operation, DynaFlex has created a substantial and significant customer base and reputation for its products and customer service.

11. Effective March 28, 2016, Sanchez began his employment at DynaFlex as a sales representative/territory manager. Sanchez's territory was in California, specifically from Santa Barbara to San Diego and everything in between. In his role, Sanchez was selling DynaFlex products and services within interstate commerce as DynaFlex's products were shipped from warehouses located in St. Louis, Missouri for sales worldwide. *See* **Exhibit 1**, a true and correct

copy of Sanchez's Employment Offer, attached hereto and incorporated by reference and **Exhibit 2** is a true and correct copy of the March 7, 2016 letter confirming Sanchez's start date at DynaFlex.

12. Sanchez reported to the Vice President of Sales, who was located at headquarters in St. Ann, Missouri.

13. In his position as sales representative/territory manager, Sanchez had access to confidential information pertaining to DynaFlex's customers and products. Because of Sanchez's direct involvement in the expansion of DynaFlex's sales within his California territory, he participated in the creation of DynaFlex's trade secrets involving those customers within his territory. For this reason, DynaFlex required as a condition of his employment that Sanchez execute the Non-Competition and Confidentiality Agreement.

14. On March 28, 2016, Sanchez (while attending training physically at DynaFlex's headquarters in St. Ann, Missouri) accepted the terms and signed the Non-Competition and Confidentiality Agreement with DynaFlex (the "Agreement"). A true and correct copy of the Agreement is attached hereto and incorporated herein as **Exhibit 3**. A true and correct copy of DynaFlex's training agenda for Sanchez for March 28, 2016 through April 1, 2016, which occurred in St. Louis, is attached as **Exhibit 4.**

15. The Agreement prohibits Sanchez from working with a competitor of DynaFlex for two (2) years after employment with DynaFlex. Specifically, Section 1(a) of the Agreement provides:

> 1. **Non-Competition Agreement.** Employee agrees that during Employee's employment by Company and for two (2) years after such employment shall have terminated for any reason, Employee shall not in any manner or in any capacity, directly or indirectly:
>
>    (a) own, manage, control or participate in the ownership, management, operation or control of or have any interest, financial or otherwise, in or act as an officer, director, partner, member, manager, employee, agent, representative, consultant or independent contractor of, or assist in any way in, or assist any individual or entity in the conduct of, any business located in or doing business in North America which is engaged in any business competitive to and/or with any business now or at any time during the period hereof engaged in by Company or any subsidiary, parent or affiliate of Company;

*See*, Exhibit 3 at pg 1.

16. The Agreement further prohibits Sanchez from soliciting DynaFlex's clients or customers, which is set forth in Section 1(c) of the Agreement as follows:

> 1. **Non-Competition Agreement.** Employee agrees that during Employee's employment by Company and for two (2) years after such employment shall have terminated for any reason, Employee shall not in any manner or in any capacity, directly or indirectly:
>
>    (c) divert or attempt to divert clients or customers (whether or not such persons have done business with Company once or more than once) or accounts of Company.

*See*, Exhibit 3 at pg 2.

17. Additionally, the Agreement prohibits Sanchez from disclosing DynaFlex's confidential and proprietary information, as set forth in Section 3:

> 3. **Non-Disclosure of Confidential & Proprietary Information.** Employee acknowledges that Confidential & Proprietary Information is important to and greatly affects the success of Company in a competitive marketplace. Employee further agrees that while employed by Company and at all times thereafter, regardless of how, when and why such employment ends, Employee shall hold in the strictest confidence, and shall not disclose, duplicate and/or use for Employee or any other person or entity any Confidential & Proprietary Information without the prior written consent of a duly authorized officer of Company, or unless required to do so in order to perform Employee's responsibilities while employed by Company. Employee acknowledges that Employee is subject to and this Agreement is governed by the Missouri Uniform Trade Secrets Act.

*See* Exhibit 3 at 2.

18. The Agreement defines confidential and proprietary information in Section 2(a) as follows:

> (a) "Confidential & Proprietary Information"; Defined. In the course of performing responsibilities as an employee of Company, Employee may come into possession of technical, financial and/or business information pertaining to Company which is not published or readily available to the public, including, but not limited to, any and all trade secrets, bids, proposals, plans, projections, strategies, designs, computer software, source code, patents, trademarks, copyrights, inventions, procedures, training methods, techniques, know how, methods of operation, marketing concepts and plans, manuals, mailing lists, pricing lists and information, sources of supplies, costs of products, rebates, and lists of and other information pertaining to and/or received from customers and/or suppliers and Employee Work Product as described in Section 2(b) hereof ("Confidential & Proprietary Information"). In addition, Employee may during the course of employment with Company receive training and instruction pertaining to the business of Company.

*See* Exhibit 3 at 2.

19. During his employment with DynaFlex, Sanchez acquired significant confidential and proprietary information and trade secrets of DynaFlex, including without limitation: (a) access and knowledge concerning DynaFlex's information relating to customers within his territory; (b) access and knowledge regarding DynaFlex's pricing overall and to specific customers; (c) access and knowledge regarding DynaFlex's product lines; and (d) access and knowledge regarding the specific requirements, specifications and purchases of customers within his territory.

20. Additionally, during Sanchez's employment with DynaFlex, he was directly involved in the development and expansion of DynaFlex's customers within his California territory.

21. On April 15, 2019, Sanchez resigned from DynaFlex.

22. On April 17, 2019, Ms. Miller, General Counsel of DynaFlex, sent Sanchez a letter confirming that his resignation was effective immediately and requested, among other things, that he sign the enclosed Certificate of Compliance. Additionally, Ms. Miller warned

Sanchez that whether or not he signed the Certificate of Compliance, DynaFlex will enforce the Non-Competition and Confidentiality Agreement. A true and correct copy of the April 17, 2019 letter is attached as **Exhibit 5**.

23. Sanchez disregarded Ms. Miller's communications and never signed the Certificate of Compliance.

24. After Sanchez's departure from DynaFlex, based on certain information and facts, DynaFlex has reason to believe that Sanchez has breached and continues to breach his contractual obligations with DynaFlex.

25. Specifically, Sanchez is working for Henry Schein, a direct competitor of DynaFlex. A DynaFlex employee observed Sanchez working the Henry Schein booth at the American Association of Orthodontists ("AAO") Conference held in Los Angeles, California.

26. Henry Schein is in the same industry and directly competes with DynaFlex in orthodontic products, sleep apnea devices and clear aligners. *See, e.g.,* **Exhibit 6**, a screen capture of Henry Schein's website.

27. Additionally, upon information and belief, Sanchez has been in contact with or intends to divert DynaFlex's customers to Henry Schein in violation of the Agreement. In fact, Sanchez told certain employees at DynaFlex that DynaFlex will "take a major hit" in Sanchez's territory.

28. On May 6, 2019, DynaFlex sent a cease and desist letter to Sanchez regarding his violations of the Agreement. A true and correct copy of the May 6, 2019 letter is attached as **Exhibit 7**.

29. Additionally, on May 6, 2019, DynaFlex sent a cease and desist letter to Henry Schein advising it of Sanchez's violations of the Agreement. A true and correct copy of the May 6, 2019 letter to Henry Schein is attached as **Exhibit 8**.

30. On May 7, 2019, counsel for Henry Schein acknowledged the cease and desist letter and advised DynaFlex that he was reviewing the matter. *See* Ex. 8.

## COUNT I: BREACH OF CONTRACT

31. DynaFlex incorporates by reference paragraphs 7 through 30 of its Verified Complaint as though fully set forth herein.

32. A valid contract existed between DynaFlex and Sanchez. *See* Ex. 3.

33. The contract was, and is, supported by sufficient consideration as evidenced by Sanchez's continued employment with DynaFlex for at least three years.

34. Despite DynaFlex's performance and willingness to perform in compliance with the Agreement, Sanchez breached the contract.

35. Sanchez agreed that for a period of two (2) years following his termination of employment from DynaFlex, he would not: (1) directly or indirectly act (whether as an employee, consultant, independent contractor, or in any other role) in a role for any business competitive to DynaFlex and (2) divert or attempt to divert any clients or customers of DynaFlex. Ex. 3, at § 3.

36. Sanchez also agreed that he would not disclose, duplicate, or use DynaFlex's confidential and/or proprietary information (including trade secrets) either during his employment or any time thereafter. Ex. 3, at § 3.

37. Sanchez breached the Agreement by, among other things, (1) agreeing to employment in some capacity with a direct competitor, Henry Schein; (2) upon information and

belief, sharing DynaFlex's confidential and proprietary information with Henry Schein; and (3) diverting or attempting to divert DynaFlex's customers to Henry Schein.

38. While the full extent of Sanchez's actions and the damages caused thereby are presently unknown, Sanchez's breach of the Agreement has caused and will continue to cause damages to DynaFlex, including without limitation jeopardy to and/or loss of DynaFlex's existing and future business relationships and contracts with its customers, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of DynaFlex's reputation, and loss of competitive advantage.

39. Accordingly, injunctive and other relief should be issued forthwith to enjoin Sanchez's conduct, hold Sanchez accountable for the promises and agreements he made, and award relief to DynaFlex to remedy Sanchez's multiple breaches of the Agreement.

### COUNT II: VIOLATION OF DEFEND TRADE SECRETS ACT

40. DynaFlex incorporates by reference the allegations of paragraphs 7 through 39 of its Verified Complaint as though fully set forth herein.

41. DTSA provides that an owner of a trade secret may bring a civil action to prevent any actual or threatened misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b) (providing for private civil actions).

42. As set forth above, upon information and belief, Sanchez has retained confidential and proprietary information – specifically DynaFlex's customer names and information – and he plans to share that information with Henry Schein, allowing Henry Schein to benefit from the time and money expended by DynaFlex in growing its territory in California and nationwide.

43. DynaFlex has gone to great lengths to protect its customer information from third parties including its competitors.

44. Sanchez knew and had reason to know that his knowledge of DynaFlex's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secrets, evidenced in part by Sanchez's express agreements and acknowledgements contained within the Agreement.

45. DynaFlex has not consented to public disclosure of its trade secrets by Sanchez.

46. DynaFlex took reasonable steps to protect its trade secrets including (a) requiring passwords to access all computers and phones; (b) requiring passwords to access certain databases including its CRM system; (c) sharing its trade secrets on a need-to-know basis and with limited employees; and (d) requiring employees who have access to trade secrets to sign a confidentiality agreement.

47. Sanchez's disclosure of DynaFlex's trade secrets would constitute a misappropriation under 18 U.S.C. § 1839(5) of the DTSA.

48. DynaFlex will be irreparably injured by Sanchez's actual or threatened misappropriation of its trade secrets.

49. DynaFlex requests a temporary restraining order, temporary injunction, and permanent injunction under 18 U.S.C. § 1836(b)(3)(A) to prevent any actual or threatened misappropriation of its trade secrets.

50. DynaFlex also requests an award against Sanchez under 18 U.S.C. § 1836(b)(3)(B) for damages for actual loss caused by the misappropriation of DynaFlex's trade secrets and damages for any unjust enrichment caused by the misappropriation of DynaFlex's trade secrets that is not addressed in computing damages for actual loss.

## COUNT III: VIOLATION OF MISSOURI UNIFORM TRADE SECRETS ACT

51. DynaFlex incorporates by reference the allegations of paragraphs 7 through 50 of its Verified Complaint as though fully set forth herein.

52. The Missouri Uniform Trade Secrets Act, Mo.Rev.Stat. § 417.450 *et seq.* ("MUTSA") provides that an owner of a trade secret may bring a civil action to prevent any actual or threatened misappropriation of a trade secret.

53. For the reasons set forth above, Sanchez misappropriated and may continue to appropriate DynaFlex's trade secrets – that is DynaFlex's customer names and information – in violation of MUTSA.

54. Accordingly, DynaFlex brings this claim to prevent the actual or threatened misappropriation of its trade secrets by Sanchez, as specifically provided under MUTSA.

55. DynaFlex requests a temporary restraining order, temporary injunction, and permanent injunction under Mo.Rev.Stat. § 417.455 to prevent any actual or threatened misappropriation of its trade secrets.

56. DynaFlex also requests an award against Sanchez to the maximum extent permitted under Mo.Rev.Stat. § 417.457, which are similar in nature to the damages described in Count II.

## COUNT IV: INJUNCTIVE RELIEF

57. DynaFlex incorporates by reference the allegations of paragraphs 7 through 56 of its Verified Complaint as though fully set forth herein.

58. Sanchez has breached, and continues to breach, his contractual Agreement with DynaFlex, including without limitation working for a direct competitor of DynaFlex and the threat to use or actual use of DynaFlex's trade secrets and other confidential and proprietary

information, materials, and documents for his employment at Henry Schein, all of which directly violates the Agreement.

59. DynaFlex cannot fully and adequately determine the extent and effect of Sanchez's actions at this time, which remain ongoing and unlawful.

60. Allowing Sanchez to violate his contractual agreements, applicable law, or both, has resulted and will continue to result in irreparable harm to DynaFlex, including without limitation loss of customers, loss of good will, loss of customer contacts, unfair competition, loss of confidential business information, loss of trade secrets, loss of reputation, loss of contracts with customers, loss of referral sources, and loss of competitive advantage.

61. DynaFlex will therefore suffer irreparable injury and harm from Sanchez's violations should injunctive relief not issue in favor of DynaFlex and against Sanchez.

62. At this time, it is impossible for DynaFlex to calculate the damage that has resulted, and will continue to result, from Sanchez's violations. It is equally impossible to calculate the resulting damages to DynaFlex's loss of tangible or intangible property, loss of customers, loss of good will, loss of customer contacts, unfair competition, loss of confidential business information, loss of trade secrets, loss of reputation, loss of contracts with customers, loss of referral sources, and loss of competitive advantage.

63. Any harm that Sanchez may allegedly incur as a result of the requested relief is overwhelming outweighed by the harm to DynaFlex should the relief not issue, a situation that Sanchez unilaterally created by himself.

64. Injunctive relief is not adverse to the public interest.

65. The requested injunctive relief, as detailed in DynaFlex's prayer for relief below, must be granted to avoid any immediate irreparable injury, loss, or damage to DynaFlex.

66.     The requested injunctive relief serves to preserve the status quo pending a determination of the controversy between the parties.

67.     DynaFlex has no adequate remedy at law concerning its claims set forth in this Count.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ortho Solutions, LC d/b/a DynaFlex prays for judgment against Defendant Sanchez as follows:

(a)     Monetary damages in an amount unknown at this time and to be proven at trial as a result of Sanchez's breach of contract, violation(s) of the Defend Trade Secrets Act, and violation(s) of the Missouri Uniform Trade Secrets Act;

(b)     Entering a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Sanchez and his agents:

(i)     With respect to confidential and proprietary information (including trade secrets) of DynaFlex, from disclosing, using, or providing any such documents, information, or trade secrets, directly or indirectly, to anyone, except for the return of such documents, information, or trade secrets directly to DynaFlex or its attorneys;

(ii)    During the period of two (2) years following the date of termination of Sanchez's employment with DynaFlex, from acting, directly or indirectly (whether as an owner, employee, consultant, independent contractor or any other role) in any capacity with a company that directly competes with DynaFlex including Henry Schein; and

(iii)   During the period of two (2) years following the date of termination of Sanchez's employment with DynaFlex, calling upon, soliciting, diverting, attempting to call upon, solicit, or divert (or assist in any of the foregoing), or accept business from/do business

with any customer/potential customer of DynaFlex that was a customer/potential customer during Sanchez's employment with DynaFlex.

(c) Award DynaFlex its attorneys' fees, costs and expenses incurred or expended by DynaFlex;

(d) Award pre- and post-judgment interest at the maximum rate permitted by law; and

(e) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

LATHROP GAGE LLP

*/s/ Matthew A. Jacober*
Matthew A. Jacober, #51585
7701 Forsyth Boulevard, Suite 500
St. Louis, MO 63105
P:  314.613.2800
F:  314.613.2801
mjacober@lathropgage.com

and

Danielle N. Twait, #60690
155 N. Wacker Drive, Suite 3000
Chicago, IL 60606-1787
P:  312.920.3306
F:  312.920.3301
dtwait@lathropgage.com

*Attorneys for Plaintiff Ortho Solutions, LC d/b/a DynaFlex*

## VERIFICATION

STATE OF _MISSOURI_     )
                        ) ss.
COUNTY OF _ST LOUIS_    )

_Darren Buddemeyer_ being first duly sworn upon his oath, states s/he is the _CEO_ of Ortho Solutions, LC d/b/a DynaFlex, a Missouri limited liability company, and s/he is the duly authorized representative of DynaFlex and verifies the above Complaint on behalf of DynaFlex that the factual allegations contained herein are true and correct to the best of her/his knowledge and belief.

ORTHO SOLUTIONS, LC D/B/A DYNAFLEX,
A MISSOURI LIMITED LIABILITY
COMPANY

By: _DARREN BUDDEMEYER_

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this _14_ day of May 2019.

_____
Notary Public

My Commission Expires: _Dec 17, 2020_

MATTHEW K MALABEY
Notary Public - Notary Seal
State of Missouri, St Charles County
Commission Number 12425860
My Commission Expires Dec 17, 2020

-14-

31201845v.2

## **CERTIFICATE OF SERVICE**

On May 14, 2019, the undersigned counsel electronically filed with the United States District Court for the Eastern District of Missouri, the above Motion for Leave to File Under Seal, which will be electronically served upon all parties having filed an appearance in this matter via the Court's CM/ECF notice of electronic filing and a copy will be mailed on May 15, 2019 to Defendant Eric Sanchez via Federal Express to the following address:

>Mr. Eric Sanchez
>28188 Moulton Parkway
>Apt #2017
>Laguna Niguel, CA 92677

>>*/s/ Matthew A. Jacober*
>>*Counsel for Plaintiff*