IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ORTHO SOLUTIONS, LC D/B/A DYNAFLEX<br><br>  Plaintiff,<br><br>  v.<br><br>ERIC SANCHEZ,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 4:19-CV-01307-RWS<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SUGGESTIONS IN SUPPORT OF ITS MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

Emergency relief is necessary here because, without immediate relief, Plaintiff Ortho Solutions, LC d/b/a DynaFlex ("DynaFlex") will face immediate and irreparable harm as a result of Defendant Eric Sanchez's ("Sanchez") knowing breaches of his Non-Competition and Confidentiality Agreement. Despite demands by DynaFlex to Sanchez to cease and desist, Sanchez is currently engaged in an active role with DynaFlex's direct competitor, Henry Schein. Further, Sanchez continues to retain, control, and/or use DynaFlex's trade secrets and other confidential and proprietary information.  As such, there is a significant likelihood Sanchez will use or divulge said trade secrets in order to divert DynaFlex's customers to Henry Schein. Sanchez made his intentions very clear to DynaFlex that he plans on diverting customers away from DynaFlex by telling DynaFlex executives the company will take a "major hit" in Sanchez's territory.

Delaying entry of the requested relief for any reason would enable Sanchez to continue his unlawful competition, solicitation, and disclosure of DynaFlex's trade secrets and other proprietary information. If allowed to continue, and especially if he succeeds in diverting

business away from DynaFlex, DynaFlex will be left irreparably harmed and without adequate remedy at law, as it would be impossible to calculate monetary damages. The requested relief should be entered immediately to temporarily enjoin and restrain Sanchez, with a preliminary injunction hearing set when reasonably practical and permitting for expedited discovery.

## FACTUAL BACKGROUND

For over 50 years, DynaFlex has manufactured and distributed products worldwide in five dental related markets: Orthodontic Products, Orthodontic Laboratory, Dental Sleep Medicine, Clear Aligners and Digital Office Solutions.  (*See* Verified Compl., Dkt. No. 1, ¶ 9.) DynaFlex is headquartered in St. Ann, Missouri.  (*Id.* at ¶ 8.)  Over the course of the years of operation, DynaFlex has created a substantial and significant customer base and reputation for its products and customer service.  (*Id.* at ¶ 10.)

Effective March 28, 2016, Sanchez began his employment at DynaFlex as a sales representative/territory manager.  (*Id.* at ¶ 11; Ex. 1.)[1]  Sanchez's territory was in California, specifically from Santa Barbara to San Diego and everything in between.  (*Id.*)   In his role, Sanchez was selling DynaFlex products and services within interstate commerce as DynaFlex's products were shipped from the warehouse and laboratory located in St. Louis, Missouri for sales worldwide.  (*Id.*)   Sanchez reported to the Vice President of Sales, who was located at headquarters in St. Ann, Missouri.  (*Id.* at ¶ 12.)

In order to perform in his role, Sanchez had access to confidential information pertaining to DynaFlex's customers and products.  (*Id.* at ¶ 13.)  Because of Sanchez's direct involvement in the expansion of DynaFlex's sales within his California territory, he participated in the creation of DynaFlex's trade secrets involving those customers within his territory.  (*Id.*)

---

[1] The Exhibits are attached to the Verified Complaint and incorporated herein by reference.  *See* Dkt. Nos. 1-1 through 1-8.

From March 28, 2016 through April 1, 2016, Sanchez attended training in-person at DynaFlex's headquarters in St. Ann, Missouri. (*Id.* at ¶ 14; *see also* Ex. 4.) During his first day of training, Sanchez accepted the terms and signed the Non-Competition and Confidentiality Agreement with DynaFlex (the "Agreement"). (*Id.* at ¶ 14; *see also* Ex. 3.) The Agreement prohibits Sanchez from working with a competitor of DynaFlex's for two (2) years after employment with DynaFlex. (Ex. 3 at § 1(a).) The Agreement further prohibits Sanchez from soliciting DynaFlex's customers. (Ex. 3 at § 1(c).) Additionally, the Agreement prohibits Sanchez from disclosing DynaFlex's confidential and proprietary information. (Ex. 3 at § 3.) The Agreement defines confidential and proprietary information in Section 2(a) as follows:

> (a) "Confidential & Proprietary Information"; Defined. In the course of performing responsibilities as an employee of Company, Employee may come into possession of technical, financial and/or business information pertaining to Company which is not published or readily available to the public, including, but not limited to, any and all trade secrets, bids, proposals, plans, projections, strategies, designs, computer software, source code, patents, trademarks, copyrights, inventions, procedures, training methods, techniques, know how, methods of operation, marketing concepts and plans, manuals, mailing lists, pricing lists and information, sources of supplies, costs of products, rebates, and lists of and other information pertaining to and/or received from customers and/or suppliers and Employee Work Product as described in Section 2(b) hereof ("Confidential & Proprietary Information"). In addition, Employee may during the course of employment with Company receive training and instruction pertaining to the business of Company.

(Ex. 3 at § 2(a).)

During his employment with DynaFlex, Sanchez acquired significant confidential and proprietary information and trade secrets of DynaFlex, including without limitation: (a) access and knowledge concerning DynaFlex's information relating to customers within his territory; (b) access and knowledge regarding DynaFlex's pricing overall and to specific customers; (c) access and knowledge regarding DynaFlex's product lines; and (d) access and knowledge regarding the specific requirements, specifications and purchases of customers within his territory. (Verified Compl. at ¶ 19.) Additionally, during Sanchez's employment with DynaFlex, he was directly

involved in the development and expansion of DynaFlex's clients within his California territory. (*Id.* at ¶ 20.)

On April 15, 2019, Sanchez resigned from DynaFlex.  (*Id.* at ¶ 21.)  Two days later, on April 17, 2019, Ms. Miller, General Counsel of DynaFlex, sent Sanchez a letter confirming his resignation was effective immediately and requested, among other things, that he sign the enclosed Certificate of Compliance.  (*Id.* at ¶ 22; *see also* Ex. 5.)  Additionally, Ms. Miller warned Sanchez that whether or not he signed the Certificate of Compliance, DynaFlex will enforce the Non-Competition and Confidentiality Agreement. (*Id.* at ¶ 22.)  Sanchez disregarded Ms. Miller's communications and never signed the Certificate of Compliance.  (*Id.* at ¶ 23.)

Since his resignation, DynaFlex has learned Sanchez is working for Henry Schein, a direct competitor of DynaFlex.  (*Id.* at ¶ 25.)  A DynaFlex employee observed Sanchez working the Henry Schein booth at the American Association of Orthodontists ("AAO") Conference held in Los Angeles, California.  (*Id.*)  Henry Schein is in the same industry and directly competes with DynaFlex in orthodontic products, sleep apnea devices and clear aligners.  (*Id.* at ¶ 26; *see also* Ex. 6.)  Additionally, upon information and belief, Sanchez has been in contact with or intends to divert DynaFlex's customers to Henry Schein in violation of the Agreement.  (*Id.* at ¶ 27.)  In fact, Sanchez told certain employees at DynaFlex that DynaFlex will "take a major hit" in Sanchez's territory. (*Id.*)

Accordingly, on May 6, 2019, DynaFlex sent a cease and desist letter to Sanchez regarding his violations of the Agreement.  (*Id.* at ¶ 28; *see also* Ex. 7.)  Additionally, on May 6, 2019, DynaFlex sent a cease and desist letter to Henry Schein advising it of Sanchez's violations of the Agreement.  (*Id.* at ¶ 29; *see also* Ex. 8.)  On May 7, 2019, counsel for Henry Schein

acknowledged the cease and desist letter and advised DynaFlex she was reviewing the matter. (*Id.* at ¶ 30; s*ee also* Ex. 8.)

DynaFlex has not consented to public disclosure of its trade secrets by Sanchez. (*Id.* at ¶ 45.) DynaFlex took reasonable steps to protect its trade secrets including (a) requiring passwords to access all computers and phones; (b) requiring passwords to access certain databases including its CRM system; (c) sharing its trade secrets on a need-to-know basis and with limited employees; and (d) requiring employees who have access to trade secrets to sign a confidentiality agreement. (*Id.* at ¶ 46.)

The risk of Sanchez divulging DynaFlex's confidential and proprietary information to or for the benefit of his new employer, Henry Schein, has caused and will continue to cause damages to DynaFlex (if unrestrained), including without limitation, jeopardy to and/or loss of DynaFlex's existing and future business relationships and contracts with its customers, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of DynaFlex's reputation, and loss of competitive advantage.

**ARGUMENT**

I. **THIS COURT HAS PERSONAL JURISDICTION OVER SANCHEZ AND NOTICE IS PROPER**

   A. **Sanchez Executed the Non-Competition and Confidentiality Agreement in Missouri and Transacted Business in Missouri**

"Missouri courts have interpreted the [Missouri long-arm statute] broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000). "To satisfy the constraints of the Due Process Clause, a defendant must have sufficient minimum contacts with the forum state so maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Citimortgage,*

*Inc. v. First Preference Mortg. Corp.*, No. 4:06-cv-01296 ERW, 2007 WL 2684272, at *2 (E.D. Mo. September 7, 2007).  The determination of whether the defendant has sufficient minimum contacts with the forum state depends on whether the court is asserting general or specific personal jurisdiction over the defendant. "If a court has general jurisdiction over a defendant it can 'adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011). For general jurisdiction to exist for an individual, the forum must be the individual's domicile . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Whereas, for a court to exercise specific jurisdiction, a plaintiff's claim must arise out of a defendant's forum-related activities covered by the long-arm statute. *Viasystems*, 646 F.3d at 593.

Upon information and belief, Sanchez is a resident of California; therefore, this Court must analyze whether it has specific jurisdiction over Sanchez. To satisfy due process, Sanchez's contacts with Missouri must be related to the causes of actions and be sufficient enough that Sanchez could "reasonably anticipate being haled into court" in Missouri. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  The Missouri long-arm statute expressly provides for jurisdiction over non-residents that make a contract within the state. R.S.Mo. § 506.500.  Missouri courts have held that finding jurisdiction based on entering a contract within the state also comports with due process. *See, e.g., May Dept. Stores Co. v. Wilansky,* 900 F.Supp. 1154, 1162 (E.D. Mo. 1995) (finding personal jurisdiction over defendant and former employee because he signed an amendment to a key contract in Missouri, made numerous visits to Missouri and had numerous communications with persons in Missouri in connection with employment).

Additionally, the Missouri long-arm statute permits jurisdiction over a non-resident defendant if the defendant transacted business within Missouri. Courts have broadly construed the "transaction of business" provision of the long-arm statute. *Id.* In fact, "Missouri courts have held that personal jurisdiction is appropriate under the long-arm statute in a contract dispute if the nonresident defendant entered the state ***for even one meeting which related to the contract at issue***." *Id.* (emphasis added) (citing to *Sheldon v. S & A Rx, Inc.*, 683 F.Supp. 1289, 1290–91 (E.D.Mo.1988); *Boatmen's First Nat'l Bank of Kansas City v. Bogina Petroleum Engineers*, 794 S.W.2d 703, 704 (Mo.App.1990); *Watlow Electric Mfg. Co. v. Sam Dick Industries, Inc.*, 734 S.W.2d 295, 298 (Mo.App.1987)).

Here, Sanchez's contacts with Missouri are more than sufficient to satisfy Missouri's long-arm statute and due process requirements. Not only did Sanchez execute the agreement that is the very subject of this lawsuit in Missouri, but he also transacted business in Missouri. The undisputed evidence shows Sanchez attended training in Missouri at the beginning of his employment with DynaFlex. While at the training in Missouri, Sanchez accepted the terms of the Agreement and signed it. Additionally, Sanchez reported to the Vice President of Sales, who works from headquarters in Missouri. And, Sanchez was selling DynaFlex products some of which were being manufactured in Missouri, other were being shipped from warehouses in Missouri. Like the defendant in *Wilansky*, Sanchez's contacts establish he "purposefully availed himself of the privileges of conducting activities within the State of Missouri in connection with his employment . . . ." *Id.* at 1163. Thus, this Court may properly exercise specific personal jurisdiction over Sanchez.

### B. Sanchez Received Advance Notice of His Violations

Rule 65 provides for restraining order with or without notice. On May 6, 2019, prior to e-filing this Motion for Temporary Restraining Order, DynaFlex emailed and mailed a cease and desist letter to Sanchez and to his new employer, Henry Schein, by separate letter, demanding Sanchez immediately cease and desist his employment with Henry Schein and cease and desist from violating his contractual agreements with DynaFlex, specifically including his non-compete with DynaFlex (such as accepting employment with Henry Schein), as well as his non-disclosure and non-solicitation agreements. (*See* Exs. 7 and 8.) The cease and desist letter to Sanchez expressly placed Sanchez on notice that he "will be held financially and legally responsible" for the damages caused to DynaFlex. (Ex. 7.)

Thus, DynaFlex has provided advance notice to Sanchez, such that the requirements of Rule 65(b) for issuing a restraining order without notice are inapplicable. Therefore, DynaFlex asks that the requested relief be issued without delay to prevent immediate and irreparable injury that may otherwise result.

### II. WITHOUT A TEMPORARY RESTRAINING ORDER, SANCHEZ WILL CONTINUE TO BREACH HIS CONTRACTUAL OBLIGATIONS

A TRO is necessary to immediately enjoin and restrain Sanchez from disclosing and/or using the trade secrets and other confidential and proprietary information he misappropriated from DynaFlex; cease and desist from contacting and soliciting DynaFlex's customers; and cease and desist any employment or other competition with DynaFlex, most notably, his current employment with Henry Schein, a direct competitor of DynaFlex. A TRO is imperative to restrain Sanchez from further breaching his contract with DynaFlex and further violating federal and state trade secret laws.

In determining whether to grant DynaFlex's request for a TRO, the Court must weigh the following four factors: (1) the probability that movant will succeed on the merits; (2) the threat of irreparable harm to the movant absent the injunction; (3) the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested parties; and (4) the public interest. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Syst., Inc*., 640 F.2d 109, 114 (8th Cir.1981) (en banc)). No single factor is dispositive; rather, all the factors must be considered to determine whether on balance they weigh towards granting the injunction. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987). District courts have broad discretion when ruling on requests for temporary restraining orders and preliminary injunctions. *Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 844 (8th Cir. 2005). Here, all four factors weigh heavily in favor of granting DynaFlex's requested relief.

### A. DynaFlex Has a Strong Likelihood of Success on The Merits

DynaFlex is not required to show a probability that it will succeed; rather, that it has "established a fair ground for litigation" with the balance of the factors tipping towards injunctive relief. *Dataphase Systems, Inc., v. C L Systems, Inc.*, 640 F.2d 109, 112-13 (8th Cir. 1981). As the Eighth Circuit explained:

> The major difficulty with application of the traditional test has arisen from the phrase "probability of success on the merits." Some have read this element of the test to require in every case that the party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits. Under this view, even if the balance of the other three factors strongly favored the moving party, preliminary relief would be denied if the movant could not prove a mathematical probability of success at trial. Although this construction of the "probability of success" requirement is technically possible, we reject it.

The fundamental question, therefore, is not whether the movant will ultimately win; rather, whether the balance of equities so favors the movant that justice requires the court to intervene to

preserve the status quo until the merits are determined.  *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir.1991)).  In considering this standard, DynaFlex is likely to succeed on at least one of its claims, favoring the granting of an injunction.

### 1. DynaFlex's is likely to succeed on its breach of contract claim.[2]

Sanchez has undeniably breached his non-compete by taking employment with Henry Schein, a direct competitor of DynaFlex.  Missouri courts have held that non-competes may be enforced because "an employer has a proprietary right in his stock of customers and their good will."  *Mills v. Murray*, 472 S.W.2d 6, 12 (Mo.Ct.App.1971).  This is especially true with sales representatives, like Sanchez, who may "exert a special influence over [a] customer." *Walter E. Zemitzsch, Inc. v. Harrison*, 712 S.W.2d 418, 422 (Mo.Ct.App.1986).  "An express agreement not to compete may be enforced as to employees having substantial customer contacts. It is not necessary to show that there is a secret customer list." *Osage Glass. Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo.1985) (en banc).

In addition to taking employment with a competitor, upon information and belief, Sanchez has used, and continues to use, DynaFlex's proprietary and confidential information in breach of his non-disclosure and non-solicitation covenants and for his own direct personal gain and benefit, and likely the direct or indirect gain and benefit of DynaFlex's direct competitor (and Sanchez's new employer), all to the severe detriment of DynaFlex.  As further evidenced by the Verified Complaint, DynaFlex will prove that Sanchez is in breach of the Agreement and has caused damages to DynaFlex.

### 2. DynaFlex is likely to succeed on its DTSA and MUTSA claims.

DTSA forbids ***actual and threatened misappropriation of trade secrets*** "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign

---

[2] Pursuant to the Agreement, Missouri law applies to the breach of contract claim.  *See* Ex. 3 at § 14.

commerce." 18 U.S. C. § 1836(b)(1) (emphasis added). Here, Sanchez made his intentions known – he intends to use (or has used) DynaFlex's trade secrets – e.g. customer information, pricing and product information – for the benefit of DynaFlex's direct competitor Henry Schein. Sanchez specifically informed DynaFlex executives the company would take a "major hit" in his territory. Given DynaFlex does not have a total market share, the only way DynaFlex would take the "major hit" Sanchez has threatened is if he intends to target the very customers he serviced while employed by DynaFlex. There are many other sources of business Sanchez could pursue, without intentionally attempting to harm his former employer, whom he promised he would not harm as a condition of his employment. Sanchez's intentions are also evidenced by the fact that he has continued to ignore DynaFlex's requests to sign the Certificate of Compliance. As stated in the Verified Complaint, Sanchez has violated DTSA and MUTSA specifically entitling DynaFlex to the requested injunctive relief.

    **B.    DynaFlex Has No Adequate Remedy at Law and Will Be Irreparably Harmed**

Courts have held a temporary restraining order is warranted to prevent irreparable harm where the defendant is in possession of the plaintiff's trade secrets and confidential and proprietary information, and continues to work for the plaintiff's competitor. *Wenger Mfg., Inc. v. Butler*, No. 05-0458-CV-W-ODS, 2005 WL 1198862, at *2 (W.D. Mo. May 19, 2005). Courts acknowledge there is a significant risk confidential information could be divulged to the competitor, which sufficiently meets the immediate and irreparable harm element. *Id.* Moreover, under Missouri law, "an employer need only demonstrate that there is a ***threat of irreparable harm***; the employer is not required to demonstrate that actual damage has occurred." *Osage Glass, Inc.*, 693 S.W.2d at 75 (emphasis added); *see also Emerson Elec. Co.*, 418 F.3d at 845 (finding the threat of the sales personnel luring away Emerson's customers met the irreparable

harm requirement because it "would be difficult to measure the amount of damages caused by the unfair competition and impossible to remedy fully because the consumers could not be forced to purchase Emerson's products.")

Here, Sanchez has breached his non-compete by working for DynaFlex's direct competitor Henry Schein. Upon information and belief, Sanchez is also breaching the non-disclosure by misappropriating DynaFlex's confidential customer information. There is a serious risk Sanchez has or will divulge such information to Henry Schein and/or use such information to compete with DynaFlex by diverting clients to Henry Schein. This concern is supported by Sanchez's own admission to DynaFlex executives that DynaFlex "is going to take a major hit in this territory" – referring to his territory in California.

Moreover, Sanchez expressly agreed and acknowledged that violations of any covenant or restriction set forth in the Agreement "would result in great damage and irreparable injury to" DynaFlex. (*See* Ex. 2 at § 7.)  Sanchez further agreed any injunction to enforce any covenant or restriction set forth in the Agreement "would not cause [Sanchez] undue hardship or prevent [Sanchez] from earning a living.  *Id.*  As such, Sanchez has expressly acknowledged a restraining order and injunctive relief sought are justified and necessary to remedy his breaches of the Agreement.  *See Panera LLC v. Nettles*, No. 4:16-cv-1181-JAR, 2016 WL 4124114, at *4 (August 3, 2016) ("Courts regularly find irreparable harm where a non-compete agreement states that its breach constitutes irreparable injury.") (internal citation omitted).

For these reasons, there is absolutely no question DynaFlex will be irreparably harmed and will have no adequate remedy at law.

   **C. The Balance of Harms Weighs in Favor of DynaFlex**

As detailed above, Sanchez's conduct threatens to inflict severe injury on DynaFlex if not enjoined, such as directly competing with DynaFlex and soliciting DynaFlex's customers, all

while using DynaFlex's trade secrets and proprietary information that he misappropriated from DynaFlex. The threated injury to DynaFlex overwhelmingly outweighs whatever damage the TRO might cause to Sanchez. Sanchez knowingly entered the Agreement, and in so doing, specifically agreed to the applicable non-compete, non-solicitation and non-disclosure provisions. *See, e.g., Emerson Elec. Co*., 418 F.3d at 846 (finding that the former employee "knowingly and voluntarily agreed to be restricted by the covenant, and any perceived harm to him by the enforcement of the agreement is outweighed by the harm foreseeable to Emerson.") Thus, to the extent Sanchez may suffer any damage, such a result was created by Sanchez's failure to abide with the Agreement and is self-inflicted.

Further, the non-compete and non-solicitation agreements are reasonable and only last for two (2) years following Sanchez's resignation. *See Alltype Fire Prot. Co. v. Mayfield*, 88 S.W.3d 120, 123 (Mo. Ct. App. 2002) (finding a two-year limitation on employment reasonable). They do not restrain Sanchez from seeking and obtaining other employment, as long as it is not in competition with DynaFlex. Thus, DynaFlex has satisfied the third requirement for an injunction.

      **D.**     **An Injunction Will Serve The Public Interest**

DynaFlex has a legitimate and protectable interest in its customer relationships and its confidential and/or proprietary information. As courts have noted, trade secrets laws are founded on public policies that favor maintenance of standards of commercial ethics and "[t]he necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world." *Kewanee Oil Co. v. Bicron Corp*., 416 U.S. 470, 481, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974); *see also Prudential Ins. Co. of Am. v. Inlay*, 728 F. Supp. 2d 1022, 1032 (N.D. Iowa 2010). Similarly, the public interest calls for enforcement of valid non-competition agreements

and the enforcement of statutes including DTSA and MUTSA. *Inlay*, 728 F. Supp. 2d at 1032; *see also Panera LLC*, 2016 WL 4124114, at *5.

The requested TRO promotes the public interest, including the promotion of freedom of contract and the enforcement of contracts between parties, which are paramount public policies. In sum, entry of the TRO will not be adverse to the public interest, but rather, will promote it.

## CONCLUSION

WHEREFORE, DynaFlex prays that this Court issue a temporary restraining order—to remain in place until a further decision and order of this Court on DynaFlex's request for a preliminary injunction—enjoining and restraining Sanchez:

(i) With respect to confidential and proprietary information (including trade secrets) of DynaFlex, from disclosing, using, or providing any such documents, information, or trade secrets, directly or indirectly, to anyone, except for the return of such documents, information, or trade secrets directly to DynaFlex or its attorneys;

(ii) During the period of two (2) years following the date of termination of Sanchez's employment with DynaFlex, from acting, directly or indirectly (whether as an owner, employee, consultant independent contractor or any other role) in any capacity for any competitor of DynaFlex, including without limitation Sanchez's employment Henry Schein; and

(iii) During the period of two (2) years following the date of termination of Sanchez's employment with DynaFlex, calling upon, soliciting, diverting, attempting to call upon, solicit, or divert (or assist in any of the foregoing), or accept business from/do business with any customer/potential customer of DynaFlex that was a customer/potential customer during Sanchez's employment with DynaFlex.

Additionally, if Sanchez opposes the entry of DynaFlex's requested TRO or if he moves to terminate or otherwise dissolve any TRO entered by the Court, then DynaFlex further requests an award of its reasonable attorneys' fees against Sanchez, as specifically permitted under the Agreement and applicable statutes, particularly in light of DynaFlex's clear entitlement to injunctive relief under the circumstances and with due consideration of Sanchez's bad faith and

plain, obvious, deliberate, and malicious misappropriation of DynaFlex's trade secrets and violation of various provisions of the Agreement.

DynaFlex also requests such other and further relief in its favor as the Court may deem just and proper.

Respectfully submitted,

LATHROP GAGE LLP

*/s/ Matthew A. Jacober*
Matthew A. Jacober, #51585
7701 Forsyth Boulevard, Suite 500
St. Louis, MO 63105
P:  314.613.2800
F:  314.613.2801
mjacober@lathropgage.com

and

Danielle N. Twait, #60690
155 N. Wacker Drive, Suite 3000
Chicago, IL 60606-1787
P:  312.920.3306
F:  312.920.3301
dtwait@lathropgage.com

*Attorneys for Plaintiff Ortho Solutions, LC d/b/a DynaFlex*

## **CERTIFICATE OF SERVICE**

On May 16, 2019, the undersigned counsel electronically filed with the United States District Court for the Eastern District of Missouri, the above Motion for Leave to File Under Seal, which will be electronically served upon all parties having filed an appearance in this matter via the Court's CM/ECF notice of electronic filing and, on May 16, 2019, a copy was mailed to Defendant Eric Sanchez via Federal Express to the following address:

>Mr. Eric Sanchez
>28188 Moulton Parkway
>Apt #2017
>Laguna Niguel, CA 92677

>*/s/ Matthew A. Jacober*
>*Counsel for Plaintiff*