# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

ORTHO SOLUTIONS, LC D/B/A )
DYNAFLEX )
                ) Case No. 4:19-cv-01307-HEA
         Plaintiff, )
                )
   -against- )
                )
ERIC SANCHEZ, )
                )
         Defendant. )

## DECLARATION OF ERIC SANCHEZ

Under 28 U.S.C. § 1746, I, ERIC SANCHEZ, hereby declare and state as follows:

   1. My name is Eric Sanchez. I am over 18 years of age and am competent to furnish this Declaration. I have personal knowledge of the facts stated herein, and I affirm that the facts stated herein are true, or, where indicated below, I believe those facts to be true.

   2. I was employed by DynaFlex from approximately March 28, 2016, through approximately April 17, 2019. DynaFlex manufactures and sells Orthodontic Laboratory products and services to dentists who are practicing orthodontics and general dentistry, and also sells orthodontic and auxiliary products, teeth aligners, and sleep apnea devices.

   3. During the entire period that I worked for DynaFlex, I was a sales representative for DynaFlex in California, specifically, for the territory in California between San Diego and Paso Robles, California. All of the customers I dealt with on behalf of DynaFlex were in California.

   4. At no time did I call on customers or make sales or otherwise transact business in Missouri. At no time was I ever responsible for Missouri. My connection with

1

Missouri was limited to coming to Missouri for training or sales related meetings, such as the initial meetings in March, 2016, and attending two of the company's Christmas parties. There were approximately two training or sales meetings in Missouri per year during the time that I was with Dyna Flex; I visited Missouri approximately seven times in all.

5. I live and work in Laguna Niguel, California. I have resided in California for 34+ years. I never resided in Missouri and first came to Missouri for the training described above.

6. The activities which DynaFlex alleges against me in this case, are alleged to have taken place in California. None of the activity that is alleged, is alleged to have taken place in Missouri.

7. I never agreed to be sued or to litigate in Missouri, over any differences I may have with DynaFlex.

8. On April 15, 2019, I gave DynaFlex two weeks' notice that I was leaving the company. DynaFlex then fired me on April 17, 2019, purportedly retroactive to April 15, and did not pay me for the two weeks.

9. On April 29, 2019, I became employed by Ortho Organizer, Inc., which does business under the trade name, Henry Schein Orthodontics. I was assigned to be a territory sales manager in Southern California, centered in the Orange County area, and slightly beyond. Any work that I have done for Henry Schein Orthodontics was in the Orange County/Southern Los Angeles County area. I have not done any work for Henry Schein Orthodontics in Missouri.

**I did not take and am not using Dyna Flex's confidential information**

10. In the complaint, I see that DynaFlex accuses me of taking its confidential and proprietary information, and of planning to use that information and share it with Henry

2

Schein. DynaFlex claims that its "confidential and proprietary" information consists of customer names and information.

11. I did not take and I am not using DynaFlex's confidential or proprietary information. I did not provide such information to Henry Schein.

12. When I started working for DynaFlex, DynaFlex provided me with a laptop computer for use in doing my job. The computer had "client relationship management software" (CRM) and other software programs already programmed onto it, which enabled me to place customer orders and deal with the customer through the company software programs. Virtually all of the customer information that I had access to at DynaFlex – even assuming that this information was "confidential" or "proprietary" – was accessed through the CRM software or through other software on the DynaFlex computer.

13. When I left DynaFlex, in mid-April, 2019, I returned the DynaFlex computer to DynaFlex, together with any other DynaFlex property I had in my possession. I did not download or make copies of the software or of the "customer information" on the computer before doing so. I did not retain any materials that DynaFlex may consider to be confidential; I do not have any of this information; I did not share any such information with Henry Schein.

14. I also note that, when I went to my subsequent job at Henry Schein, I was specifically instructed by Henry Schein personnel not to use, and not to bring to Henry Schein, any information from my prior employers, including DynaFlex. I was specifically advised that Henry Schein would not accept any such material.

15. Also, I disagree with the claim by DynaFlex that customers' names are DynaFlex's confidential or proprietary information. All of the customers that I worked with while at DynaFlex were dentists who openly practiced orthodontics from offices that were in

3

public locations; these offices were open to – and promoted to – the public. Patients and other suppliers all knew that these were dentists who were practicing orthodontics. All product suppliers knew that the offices need supplies; there was no secret as to who the customers are. I believe that each of these dentists would claim that their names, and their choices of product, were their own information, and did not belong to DynaFlex.

16. In addition, DynaFlex is not a full line distributor of dental products, and typically could not supply all of the products needed to run a practice. As noted above, DynaFlex sells specific specialty items -- orthodontic laboratory products, other orthodontic products, related products, aligners and sleep apnea devices[1]. Virtually every dentist that I worked with and that was purchasing from DynaFlex, was also purchasing from a full line dental supplier, and was generally also purchasing from other specialty orthodontics suppliers, because auxiliary products, brackets and other orthodontic products are available from many companies, some of whom are better known and have much larger sales than DynaFlex. Thus, the dentists who are "DynaFlex customers" are typically also customers of other dental and orthodontics suppliers, all of whom know the names and information regarding such customers.

17. As a DynaFlex sales representative, I believe I had little to no ability to influence the customers concerning the products to buy on an ongoing basis. Some customers were specifically interested in DynaFlex Laboratory products and services. But for auxiliary products, and certain other orthodontics products, the supplier with the lowest price frequently received the orders. Some of these products are nearly commodity in nature. For example, one of the main auxiliary products is rubber bands—the rubber bands that people put on the braces that they wear.

---

[1] I was not involved in selling the sleep apnea products.

4

18.     Only in connection with the DynaFlex Orthodontic Laboratory products and services, did DynaFlex's name stand out or have some clout.  Orthodontic Laboratory products are products that are typically custom made by the laboratory, for a particular patient, based on specific directions and information received by DynaFlex from the dentist.  This was DynaFlex's original business, and in my experience at DynaFlex, DynaFlex's laboratory products and services are the only ones where DynaFlex, or I as a DynaFlex sales representative, had influence.  But I was not the only or even the primary contact between the dentist customers and DynaFlex on laboratory products.  Customers are in direct contact with the laboratory concerning the custom laboratory work to be done.  DynaFlex developed a method for the dentists to provide the instructions and specifications needed for a product, directly to the laboratory.  This is done digitally and directly and did not involve me as a sales representative.

19.     I note that DynaFlex is attempting to prevent me from working anywhere in the orthodontics supply industry, and from selling to or soliciting anyone who DynaFlex regards as its customer.  DynaFlex appears to be trying to claim as "its" customers, both the customers who have relationships with DynaFlex, such as those who make use of DynaFlex's Laboratory products and services, or who buy product from DynaFlex, as well as the dental practices which make minimal purchases from DynaFlex of near-generic products, and who are customers of several other companies. I never had the kind of influence over the customers that would enable me to steer or "divert" them from their chosen supplier.

20.     I believe that DynaFlex's efforts to enjoin me from working is punitive and does not represent an effort by DynaFlex to protect any legitimate interest.  Like DynaFlex's actions in suing me in Missouri – where I never agreed to be sued – this seems like an effort to

punish me, and saddle me with huge expenses in litigating, rather than an effort to protect any legitimate interest of DynaFlex.

**Employment at Henry Schein Orthodontics**

21.     I became employed at Henry Schein Orthodontics on April 29, 2019, just under two weeks after I was terminated by DynaFlex. I was employed as a territory sales manager in Southern California, centered on Orange County. I have not done any work for Henry Schein Orthodontics in Missouri.

22.     After I joined Henry Schein Orthodontics, I found that most or all of the customers I worked with at DynaFlex were already existing customers of Henry Schein Orthodontics. This was consistent with my experience in the field, that most customers are buying from multiple suppliers, and that other suppliers have plenty of information on the customers.

23.     I note that Henry Schein Orthodontics does not have an Orhodontics Laboratory Division and does not sell traditional laboratory products.

24.     On or about May 21, 2019, I went into the leasing office in the apartment complex where I live and found a FedEx envelope labeled "Attempted Delivery Unknown." The envelope contained the Summons and Complaint, which I was alarmed to discover. Other than the FedEx envelope, I have not received a copy of the Summons and Complaint through any other means. No summons has been served on me by a process server.

6

I declare under penalty of perjury that the foregoing is true and correct, to the best of my own knowledge, information and belief.

Executed on:  May 28, 2019

                                            ERIC SANCHEZ